UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X   Docket No. 21-cv-5271
BRIYONAH MCCLAIN,

                           Plaintiff,                          **COMPLAINT**

-*against*-

                                                             *PLAINTIFF DEMANDS*
KISS NAIL PRODUCTS, INC.,                           *A TRIAL BY JURY*

                           Defendant.
-------------------------------------------------------------------X

Plaintiff, BRIYONAH MCCLAIN, by and through her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, against Defendant, KISS NAIL PRODUCTS, INC., alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. This is a civil action based upon Defendant's violations of Plaintiff's rights guaranteed to her by: (i) the race discrimination and retaliation provisions of the **Title VII of the Civil Rights Act of 1964**, as amended ("Title VII"); (ii) the race discrimination and retaliation provisions of **42 U.S.C.** § 1981 ("Section 1981"); (iii) the race discrimination and retaliation provisions of the **New York State Human Rights Law**, and (iv) any other claim(s) that can be inferred from the facts set forth herein.

2. Plaintiff seeks redress for the injuries she has suffered as a result of her employer's **discrimination and retaliation** solely on the basis of his race (Black).

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331 and 1343.

4. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state

law pursuant to 28 U.S.C. §1367.

5. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C. § 1391(b).

## **PROCEDURAL PREREQUISITES**

6. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") upon which this Complaint is based.

7. Plaintiff received a Notice of Right to Sue from the EEOC dated September 10, 2021 with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

8. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## **PARTIES**

9. Plaintiff BRIYONAH MCCLAIN ("Plaintiff"), is a Black woman and a resident of the State of New York, Kings County. At all relevant times herein, Plaintiff was an employee of Defendant KISS NAIL PRODUCTS, INC.

10. At all relevant times herein, Plaintiff was and is a "person" and an "employee" entitled to protection as defined by federal and state laws.

11. At all relevant times herein, Defendant KISS NAIL PRODUCTS, INC. ("Defendant") was and is a New York corporation headquartered at 25 Harbor Park Drive, Port Washington, New York 11050.

12. At all relevant times herein, Defendant "employs" fifteen or more "employees," and is thus an "employer" within the meaning of Title VII, Section 1981, and the NYSHRL.

## FACTUAL ALLEGATIONS

13. On or about April 30, 2018, Defendant hired Plaintiff as an Assistant Manager earning $50,000 annually.

14. On June 10, 2020, Plaintiff emailed Peter Won ("Won"), Head of Human Resources, to discuss the possibility of Defendant observing the upcoming Juneteenth holiday.

15. Following her email, Plaintiff spoke to Won, who said it was not a "good idea" because Defendant needed time to educate itself. Despite the fact, which Plaintiff pointed out to Won, that she provided links for Defendant's employees to learn about the Juneteenth holiday, Won questioned Plaintiff on how a person would celebrate the holiday, implying that it was not a real holiday.

16. Plaintiff's direct supervisor Maria Soares ("Soares"), Senior Brand Manager, also contacted Plaintiff because of her email to Won. Initially empathizing with Plaintiff, Soares suggested Plaintiff take some time to strengthen her resume so she could land a better role somewhere else.

17. On June 17, 2020, Plaintiff received an e-mail from Annette Goldstein ("Goldstein"), VP of Global Marketing, regarding negative feedback from dark-skinned consumers on Defendant's salon acrylic nails product. Specifically, the dark-skinned consumers expressed concern with the lack of nail color options suitable for darker skin tones.

18. In addition to Plaintiff, Goldstein's email was also directed to Lola Alade and Jazmine Brown, both of whom are black females, demanding their availability, along with Plaintiff's, to use them as testers to evaluate new shade adjustments by the marketing team.

19. Immediately following the e-mail, Plaintiff had an in-person meeting with Goldstein to voice her concerns.

20. During the meeting, Plaintiff explained to Goldstein that her e-mail was offensive and

3

made her feel undervalued as if her only purpose as an employee was to be a black "test subject".

21. In response, Goldstein ignored Plaintiff's concerns and told her the company culture was, "everything takes a while to become the norm." As a result, Plaintiff left the meeting feeling even more offended and confused.

22. In August 2020, Plaintiff spoke with Soares after Plaintiff had declined to participate in a buyer video outside of her responsibilities. During the conversation, Plaintiff complained that, unlike her non-Black colleagues, she was pressured to participate in video. Plaintiff further complained that this pressure and Defendant's prior dismissal of her Juneteenth request were discriminatory.

23. On August 17, 2020, Wendy Heppt ("Heppt"), Senior Copywriter, sent an email regarding a comment social media post made in response to an advertisement of Defendant's product which featured a black model using African-American vernacular (AAVE) to describe the advertised products.

24. The product was advertised as, "It's the nails, liner, lashes for us. Crushing over this GLUEliner on @kendramorous <3."

25. Heppt's e-mail was addressed to multiple employees asking for suggestions as to whether the company should issue an apology for its usage of AAVE in a product advertisement. Plaintiff, though, was specifically asked to weigh in on this because her opinion would be respected in this "department."

26. Upon information and belief, Heppt's "respect" for Plaintiff's opinion in this "department" was purely based on the fact that Plaintiff is Black.

27. In response to Heppt's e-mail, Plaintiff forwarded another social media comment, **"@t.avi_ just makes me a little mad this white a\*\* company is using aave when they**

4

**most def have like 2 black employees."** Moreover, Plaintiff's e-mail suggested possible diversity and inclusion issues within the company and asked for thoughts on the issues.

28. Plaintiff further expressed her concerns regarding the lack of diversity on the corporate and partnership level. Plaintiff additionally provided her thoughts on the usage of AAVE and Ebonics, both of which are a symbol of oppression that denies opportunities to many African-Americans for speaking "ghetto." As such, Plaintiff ultimately conveyed that Defendant's use of AAVE in its advertisement was offensive.

29. Plaintiff also stated that she was not a diversity and inclusion expert and suggested that the company do its due diligence in researching an appropriate response. Plaintiff affirmatively said that targeting black employees on how to properly respond to the social media comments was offensive and insensitive.

30. In November 2020, Plaintiff received a delayed mid-year evaluation which contained incorrect and missing information, greatly reducing her evaluation score.

31. On November 9, 2020, Plaintiff met with Carrie Connell ("Connell"), Director of Global Marketing. Plaintiff described to Connell all of the missing and incorrect information and complained that the evaluation was discriminatory.

32. Connell advised Plaintiff that she would speak with Soares and Human Resources about the evaluation. However, Plaintiff never heard back from Connell and Plaintiff's repeated follow-up emails were ignored.

33. Also in or around November 2020, Plaintiff began to notice that her workload was severely declining and she was being assigned tasks beneath the scope of her responsibilities and capabilities, similar to work performed by interns, such as organizing and creating redundant and unnecessary documents and physically packing company materials.

34. Plaintiff complained to Soares on various occasions regarding the recently assigned tasks

and mentioned that she was capable of handling more complex matters. Indeed, these tasks were so below Plaintiff's responsibilities and assignments prior to her complaint that other employees in her department also complained. However, the complaints went ignored and the low-level task assignments continued.

35. On December 9, 2020, Defendant terminated Plaintiff's employment. Connell advised Plaintiff that the reason for her termination was budget cuts.

36. Upon information and belief, this was pretextual and the real reason for Plaintiff's termination was retaliation for her complaints.

37. As a result of the Defendant's discriminatory and intolerable treatment of Plaintiff, she suffered severe emotional distress, which would not have occurred had Defendant not subjected Plaintiff to racial discrimination that resulted in her termination.

38. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

39. Defendant's actions and conduct were intentional and intended to harm Plaintiff.

40. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against Defendant.

**FIRST CAUSE OF ACTION**
*Race Discrimination in Violation of Title VII*

41. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

42. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1), states in

6

relevant part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's **race**, color, religion, sex, or national origin[.]

43. As described above, Defendant discriminated against Plaintiff on the basis of her race, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on her race.

44. As a result of the unlawful discriminatory conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

45. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION**
*Retaliation in Violation of Title VII*

46. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

47. Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

7

48. As described above, Plaintiff engaged in protected activities, including making internal complaints regarding Defendant's discrimination based on Plaintiff's race.

49. As described above, after Plaintiff engaged in activity protected by Title VII, Defendant took adverse actions against Plaintiff by, *inter alia*, terminating her employment, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

50. As a result of the retaliatory conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

51. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**THIRD CAUSE OF ACTION**
*Race Discrimination in Violation of the NYSHRL*

52. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

53. New York State Executive Law §296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

8

54. As described above, Defendant discriminated against Plaintiff on the basis of her race, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, harassment of Plaintiff based on his race. As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

55. As a result of Defendant's unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

56. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION
*Retaliation in Violation of the NYSHRL*

57. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

58. New York State Executive Law § 296(7) provides that:

    > It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she filed a complaint, testified, or assisted in any proceeding under this article.

59. As described above, Plaintiff engaged in protected activities, including making internal

9

complaints regarding Defendant's discrimination based on Plaintiff's race.

60. As described above, after Plaintiff engaged in activity protected by the NYSHRL, Defendants took adverse actions against Plaintiff by, *inter alia*, terminating Plaintiff's employment, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

61. As a result of Defendant's retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

## JURY DEMAND

62. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII, Section 1981, and NYSHRL, in that Defendant discriminated against Plaintiff on the basis of her race and retaliated against Plaintiff for engaging in protected activity;

B. Restraining Defendant from any retaliation against Plaintiff for participating in any form in this litigation;

C. Declaring preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

D. Awarding damages to Plaintiff for all damages resulting from Defendant's unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

E. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

F. Awarding Plaintiff punitive damages;

G. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: New York, New York
September 22, 2021

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By: /s/ Darnisha Lewis-Bonilla
Darnisha Lewis-Bonilla, Esq.
*Attorneys for Plaintiff*
585 Stewart Avenue, Suite 410
New York, New York 11530
T: (212) 248-7431
F: (212) 901-2107
dlewis-bonilla@tpglaws.com